805 F.2d 1033
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
CAMPBELL FORD, AMC, JEEP, RENAULT, INC., Plaintiff-Appellant,
v.
FORD MOTOR COMPANY; Bob Mullins Ford, Inc.; Mullins Ford
Lincoln Mercury, Inc.; and Bob Mullins Ford,
Lincoln, Mercury Sales, Inc.,
Defendants- Appellees.
 No. 85-6024.
 United States Court of Appeals, Sixth Circuit.
 Oct. 21, 1986.
 
 Before KEITH and KENNEDY, Circuit Judges, and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, a Ford Motor Company heavy-duty truck dealership, sued Ford Motor Company (FMC) and three other FMC dealerships claiming that sales by the other dealerships of heavy-duty trucks in plaintiff's dealer locality were in violation of plaintiff's contractual and statutory rights. The District Court granted summary judgment to defendants. We affirm.
 
 
 2
 This case presents four issues on appeal. First, whether the practice of ordering heavy-duty trucks through the heavy-duty truck franchise of Bob Mullins Ford, Inc. and having the trucks delivered to and sold by the regular-line dealerships, Mullins Ford Lincoln Mercury, Inc. and Bob Mullins Ford, Lincoln, Mercury Sales, Inc., conduct which was carried out with the knowledge of FMC, violated plaintiff's contract with FMC. Second, whether FMC's knowledge of this conduct and its failure to prevent defendants Mullins from continuing this conduct violated the Automobile Dealers Day in Court Act, 15 U.S.C. Secs. 1221-1225 (1982). Third, whether this conduct violated the Virginia statute, Va.Code Ann. Sec. 46.1-547(d) (Michie Supp.1986), declaring unlawful the granting of additional franchises for a particular line in a trade area already served by this line without following certain procedures. Finally, whether this conduct violated the Tennessee statute, Tenn.Code Ann. Sec. 55-17-114 (Michie Supp.1986), enumerating grounds for denial, suspension or revocation of dealer licenses.
 
 
 3
 Plaintiff's Sales Agreement with FMC designates plaintiff's dealer locality as Sullivan County, Tennessee and Washington County, Virginia. Bob Mullins Ford, Inc., is a Ford heavy-duty truck dealership located in London, Kentucky (not within plaintiff's dealer locality). Mullins Ford Lincoln Mercury, Inc., is a regular-line Ford dealership located in Richlands, Virginia, within plaintiff's dealer locality but located more than ten miles driving distance from plaintiff's principal place of business. Bob Mullins Ford Lincoln Mercury Sales, Inc. is also a regular-line Ford dealership but is not located within plaintiff's dealer locality.[1]
 
 
 4
 In order to encourage a distribution channel for regular-line dealerships to obtain heavy-duty trucks for sale to their customers, Ford has established a heavy-duty truck resale program. This program is available to all dealerships, and plaintiff has participated in this program. The program provides for payment of one percent of the suggested list price of the base vehicle to a Ford heavy-duty truck dealership who sells Ford heavy-duty trucks to a regular-line Ford dealership ordering the truck for resale. The Ford Heavy Duty Truck Sales And Service Agreement (Sales Agreement), the standard agreement between FMC and Ford heavy-duty truck dealerships, authorizes this incentive program.[2]
 
 
 5
 FMC moved for summary judgment on April 16, 1985, requesting the District Court to rule that plaintiff did not have the exclusive right to sell heavy-duty trucks in its dealer locality. On May 3, 1985, the District Court concluded that no authorized Ford heavy-duty truck dealership has the exclusive right to sell heavy-duty trucks in its dealer locality.[3] (This was part of plaintiff's original claim.) The parties then had a pretrial conference that produced a Revised Pretrial Order. Numerous exceptions to that Order were made and another pretrial conference was held. This conference produced a memorandum agreed to by all the parties stating the combined issue of law and fact.[4] The District Court placed the memorandum in the record to assure all parties of the issues in the suit.[5] In addition, the Court stated that the memorandum "is a modification of the previous pretrial order and supplants the pleadings in this action."[6]
 
 
 6
 The District Court granted defendants' motion for summary judgment. It concluded that the practice complained of did not violate the Sales Agreement between plaintiff and FMC. The Court relied on the fact that Ford's Heavy Duty Truck Sales Agreements authorize heavy-duty truck dealerships, such as defendant Bob Mullins Ford, Inc., the source of the heavy-duty trucks, to sell these trucks to regular-line dealerships, and that such Agreements authorize the regular-line dealerships to purchase these trucks for resale. The Court noted that plaintiff himself engaged in this practice.
 
 
 7
 The District Court also concluded that the resale practice did not violate the Automobile Dealers Day in Court Act.[7] The Court emphasized that the term "good faith" for the purposes of this statute has been given a very restrictive meaning. In order to fail to act in good faith, the manufacturer must coerce, intimidate, or threaten to coerce a dealer. Overseas Motors, Inc. v. Import Motors Ltd., Inc., 519 F.2d 119, 124 (6th Cir.), cert. denied, 423 U.S. 987 (1975). It found nothing in the facts alleged in the present case to indicate that FMC failed to act in good faith toward plaintiff.
 
 
 8
 Finally, the Court concluded that defendants did not violate the Tennessee or Virginia statutes. It concluded that the Tennessee statute does not create a private cause of action and does not apply to the facts of the case because the defendant dealerships are not located in Tennessee. The Court concluded that FMC did not violate the Virginia statute[8] because there was no contention that FMC granted an additional heavy-duty truck dealership within plaintiff's dealer locality.
 
 
 9
 On appeal, plaintiff makes essentially the same four arguments. He also contends, however, that the District Court "misconceived" the nature of his complaint. According to plaintiff, he never complained about the occasional sale of heavy-duty trucks at regular-line dealerships. Plaintiff alleges that, because of defendants Mullins consistent advertisement and sale of heavy-duty trucks at the two regular-line dealerships, Mullins established de facto heavy-duty dealerships at its regular-line dealerships within Campbell's dealer locality. This, he contends, is a breach of his heavy-duty truck dealership rights.
 
 
 10
 I. The Sales Agreement Between Plaintiff and FMC.
 
 
 11
 Initially, appellees contend that the pretrial memorandum agreed to by the parties precludes this Court from considering the de facto dealership claim, that Mullins' regular-line dealerships have held themselves out as heavy-duty truck dealerships, thus violating certain provisions of the Sales Agreement between FMC and plaintiff. We need not decide this question since even if the de facto dealership claim is properly before this Court, the District Court judgment for defendants must be affirmed.
 
 
 12
 Plaintiff's Sales Agreement with FMC authorizes FMC to appoint additional heavy-duty truck dealerships within or without plaintiff's dealer locality. Only if the proposed dealership is within ten miles driving distance of plaintiff's principal place of business must FMC provide a study pursuant to paragraph 9(a) of the Sales Agreement. Neither of the allegedly de facto heavy-duty dealerships are within this ten mile driving distance. Thus, Ford would not have breached its contract if defendants' dealerships were heavy-duty truck dealerships.
 
 
 13
 II. The Automobile Dealers Day In Court Act.
 
 
 14
 The District Court was correct in concluding that FMC did not violate the Act. As this Court in Overseas Motors stated, "[t]he cases have uniformly held that evidence of coercion or intimidation is necessary to a showing of lack of good faith under the statute...." Overseas Motors, Inc., 519 F.2d at 125. No evidence of coercion was presented in this case. In fact, because the Heavy Duty Truck Sales Agreements authorize heavy-duty truck dealerships to sell such trucks to regular-line dealerships and regular-line dealerships to resell these trucks, FMC might be charged with violating the Act had it attempted to prevent defendants Mullins from engaging in this practice.
 
 
 15
 III. The Virginia Statute.
 
 
 16
 The Virginia statute is directed only toward manufacturers or their representatives. Accordingly, defendant dealerships are not subject to the statute's sanctions.
 
 
 17
 Plaintiff cites no authority for the proposition that Mullins' sales of heavy-duty trucks from its regular-line dealerships was tantamount to FMC "granting" heavy-duty truck dealerships in violation of Virginia law. Plaintiff refers to a letter dated March 30, 1982 received from the Virginia Attorney General in response to plaintiff's complaint regarding the allegedly unauthorized dealerships. In this letter, the Special Assistant, citing the Sales Agreement, informed plaintiff that he did not have an exclusive right to sell Ford heavy-duty trucks in his dealer locality. Furthermore, the Virginia Department of Motor Vehicles, in response dated March 2, 1984 to a complaint from plaintiff, reviewed advertisements made by one of the defendants. Plaintiff contended that these ads demonstrated that the regular-line dealerships were holding themselves out as authorized heavy-duty truck dealerships. The Virginia Department of Motor Vehicles disagreed and concluded that these advertisements did not constitute an unfair and deceptive trade practice.
 
 
 18
 Although it is unclear whether the Virginia Attorney General or the Department of Motor Vehicles considered the statute at issue in this case, the letter from the Department of Motor Vehicles did say that the matter was a contractual matter between FMC and plaintiff.
 
 
 19
 IV. The Tennessee Statute.
 
 
 20
 Plaintiff cites no authority to support its conclusion that the District Court was incorrect regarding its conclusion on the Tennessee law claim. Defendants note that section 55-17-117(a) provides that all civil penalties for violations of the statute shall be paid into the general fund of the State. Similarly, nothing in the statute or plaintiff's brief indicates that it creates a private cause of action. Furthermore, plaintiff stipulated that defendant regular-line dealerships are located in Virginia. Plaintiff does not contend that the statute has extraterritorial effect; by the statute's terms, it applies only to manufacturers, dealerships, and salesmen who apply for a license or are operating under a license issued by the Tennessee Commission of Motor Vehicles. There is no allegation or proof of any operation in the State of Tennessee.
 
 
 21
 Accordingly, the judgment of the District Court is affirmed.
 
 
 
 [1]
 Plaintiff sued only these three dealerships plus FMC. Nonetheless, in his brief on appeal, plaintiff states that the Mullins defendants have three unauthorized heavy-duty truck dealerships. Plaintiff implies that another car dealership owned by defendant Mullins is a Ford regular-line dealership selling heavy-duty trucks. Defendant Mullins does own another car dealership located in plaintiff's dealer locality. However, plaintiff did not sue this dealership apparently because it is a franchised dealership exclusively for Volvo, Subaru, and Volkswagan. Thus, plaintiff did not allege that this dealership ever sold Ford heavy-duty trucks
 
 
 [2]
 See infra note 3
 
 
 [3]
 The District Court apparently relied on two provisions in the Sales Agreement between FMC and plaintiff. Paragraph 4 of the Sales Agreement provides:
 The Company may encourage Authorized Ford Truck dealers to promote the sale of HEAVY DUTY TRUCKS and increase their purchases of such units from Authorized Ford Heavy Duty Truck dealers....
 Sales Agreement at 4. (See Joint Appendix at 141). Paragraph 9(c) of the Sales Agreement provides:
 The Company shall have the right to appoint additional dealers in HEAVY DUTY TRUCKS within or without the DEALER'S LOCALITY except that, if an additional dealer will be within the DEALER'S LOCALITY and within ten (10) miles driving distance of the Dealer's principal place of business, the Company shall not appoint the additional dealer unless a study made pursuant to subparagraph 9(a) reasonably demonstrates, in the Company's opinion, that such appointment is necessary....
 Sales Agreement at 13. (See Joint Appendix at 150).
 
 
 [4]
 The memorandum, in pertinent part, provides:
 Whether the sales to consumers [of Ford heavy-duty trucks] within Campbell's dealer locality, by [the Mullins defendants] ... with the knowledge and consent of Ford Motor Company, violates Campbell's rights under its Ford heavy-duty truck sales and service agreement or 15 U.S.C. Sec. 221; Va.Code Ann. 46.1-547(d), or T.C.A. Sec. 55-17-114.
 See Joint Appendix at 357.
 
 
 [5]
 Memorandum and Order, District Court, Filed October 3, 1985
 
 
 [6]
 Id. at 2. See Joint Appendix at 357. The District Court concluded that, based upon the memorandum, there was no issue of tortious interference by Mullins with the Sales Agreement between plaintiff and FMC. Id. at 3. See Joint Appendix at 358. Plaintiff did not object to this conclusion
 
 
 [7]
 The Act authorizes dealers to bring suit in federal court against manufacturers when they fail to act in good faith in performing and complying with the terms of a franchise agreement. The Act defines "good faith" as follows:
 the duty of each party to any franchise, and all officers, employees, or agents thereof to act in a fair and equitable manner toward each other so as to guarantee the one party freedom from coercion, intimidation, or threats of coercion or intimidation from the other party....
 15 U.S.C. Sec. 1221(e).
 
 
 [8]
 The Virginia statute provides:
 It is unlawful for any manufacturer ... (d) to grant an additional franchise for a particular line-make of motor vehicle in a trade area already served by a dealer or dealers in that line-make unless the franchisor has first advised in writing such other dealers in the line-make and the trade area....
 Va.Code Ann. Sec. 46.1-547(d).